**NATIONAL MEAT ASSOCIATION, American Meat Institute, et al., Plaintiffs-Appellants,**

v.

**George DEUKMEJIAN, et al., Defendants-Appellees.**

No. 83–1979.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 16, 1984.

Decided Sept. 21, 1984.

Judgment Affirmed Jan. 7, 1985.
See 105 S.Ct. 768.

3. The parties did not argue that the other two exceptions to *Leon* applied.

Hershel Shanks, James M. Kefauver, Glassie, Pewett, Dudley, Beebe & Shanks, Washington, D.C., Don T. Hibner, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for plaintiffs-appellants.

John N. Politis, Barnes, Richardson & Colburn, Los Angeles, Cal., for amicus curiae Meat Importers.

Roderick E. Walston, Office of the Atty. Gen., San Francisco, Cal., for defendants-appellees.

Before MERRILL, FARRIS, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge.

The National Meat Association, the American Meat Institute, and eleven beef processors appeal the district court's ruling upholding the constitutionality of a California tax on imported processed beef. 562 F.Supp. 357 (1983). We find that the California tax violates the Commerce Clause of the U.S. Constitution by discriminating against interstate commerce, and we reverse the district court's decision.

## I. FACTS

In 1956, the California Legislature enacted the California Beef Council Law, Cal. Agric.Code § 64501–64735 (West 1968). The purpose of the law was to promote the California beef industry. The statute described the beef industry as "a paramount industry of this state which not only provides substantial and required revenues for the state ... and employment and means of livelihood for many thousands of its population, but also furnishes essential foods that are vital to the public health and welfare." Cal.Agric.Code § 64531 (West 1968).

The law created an advisory beef council of range cattlemen, cattlefeeders, and dairymen to conduct research and educational programs intended to expand the market for beef. Cal.Agric.Code § 64661 (West

1968). The law was later amended to add cattle slaughterers and one member of the general public to the Beef Council.

To stimulate demand for beef in California, the Council uses television and radio commercials, billboards, and posters. The council produces and distributes basic beef buying information, films, and school lesson plans regarding beef's role in a balanced diet, the beef industry's contribution to a healthy economy, and the importance of cattle in the economic and ecological systems. The Beef Council also studies consumer attitudes and market behavior to develop better advertising and educational programs.

Originally, the Beef Council was to be funded by voluntary contributions. In 1967, however, the law was amended to impose a mandatory ten cent "head fee" on all cattle sold in California. In 1978, the fee was increased to twenty-five cents per head.

In February 1982, the legislature once again amended the law in response to what it termed "[t]he current depressed conditions of the beef cattle industry, caused in part by consumer misconceptions regarding the role of red meat and animal fats in the basic diet ...." 1982 Cal.Legis.Serv. 94 (West). The amendment raised the head fee on cattle sold in California to $1.00 and, for the first time, imposed an assessment on out-of-state beef processors. This so called "mil assessment" taxed processors by the pound in boned, boxed, or carcass beef imported into California. The mil assessment charged to out-of-state beef processors is not the same as the in-state head fee. In-state fees are imposed on sellers of cattle—a flat per head charge. The out-of-state assessment is levied on a different group—beef processors. The assessment is made on a per pound basis and varies slightly with the type of processed beef.

In July 1982, the Beef Council law was further amended. The out-of-state assessment was reduced and restructured to insure that out-of-state processors would not be charged more than the equivalent of the $1.00 head fee imposed on California beef producers.

In March 1982, two nationwide associations of beef processors and eleven individual out-of-state beef processors brought the instant suit. The processors contended that the California Beef Council law violates the Commerce Clause of the United States Constitution, (art. I, § 8, cl. 3) by discriminating against interstate commerce and violates both the Commerce Clause and Due Process clauses (amend. XIV, § 1) by imposing a tax on beef processors who lack sufficient contacts or "nexus" with California and, therefore, are outside the reach of the state's taxing power.[1]

At pretrial conference, the parties to this suit stipulated that there were no triable issues of fact and agreed to submit the case on cross-motions for summary judgment. The district court granted summary judgment in favor of the state defendants, which we now reverse.

Because we hold that the California tax discriminates against interstate commerce, we do not reach the nexus issue.[2] *See*

---

1. Nexus "is the outstanding prerequisite on state power to tax. Consistent with this requirement there must be 'some definite link, some minimum connection, between the state and the person, property or transaction it seeks to tax.'" *American Oil Co. v. Neill,* 380 U.S. 451, 458, 85 S.Ct. 1130, 1135, 14 L.Ed.2d 1 (1965) (quoting *Miller Bros. Co. v. Maryland,* 347 U.S. 340, 344–45, 74 S.Ct. 535, 538–39, 98 L.Ed. 744 (1954)). The importance of nexus as a prerequisite for the taxation of interstate commerce was reaffirmed in *Complete Auto Transit v. Brady,* 430 U.S. 274, 285, 97 S.Ct. 1076, 1082, 51 L.Ed.2d 326 (1977), and *Maryland v. Louisiana,* 451 U.S. 725, 754, 101 S.Ct. 2114, 2133, 68 L.Ed.2d 576 (1981). *See National Geographic Soc'y v. Board*

*of Equalization,* 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977) (allowing state to impose a duty to collect tax on out-of-state corporation that maintained advertising offices in state), *National Bellas Hess v. Dept. of Revenue,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967) (striking down state tax on out-of-state mail order firm that maintained no offices or representatives in taxing state).

2. We also do not reach an issue raised by the Meat Importers Council of America, filing as *amicus curiae.* They contend that a California assessment on imported beef is unconstitutional under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3 (granting Congress the authority to

*Armco, Inc. v. Hardesty,* —— U.S. ——, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984) (Supreme Court does not reach nexus issue because it found West Virginia tax unconstitutionally discriminated against interstate commerce).

## II. STANDARD OF REVIEW

■ Grants of summary judgment are reviewable by this court de novo. *National Union Fire Insurance Co. v. Argonaut Insurance Co.,* 701 F.2d 95, 96 (9th Cir. 1983). Summary judgment is properly granted when it appears that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Here, because the parties stipulated to all material facts, we are concerned only with matters of law.

## III. LEVEL OF SCRUTINY

We consider the issue of discrimination against interstate commerce raised in this case in light of the balance that must be maintained between the purpose of the Commerce Clause, " 'to create an area of free trade among the several states,' " *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 328, 97 S.Ct. 599, 606, 50 L.Ed.2d 514 (1977) (quoting *McLeod v. J.E. Dilworth Co.,* 322 U.S. 327, 330, 64 S.Ct. 1023, 1025–26, 88 L.Ed. 1304 (1944)), and "the legitimate interest of the individual States in exercising their taxing powers .... " *Boston Stock Exchange,* 429 U.S. at 329, 97 S.Ct. at 606. We note that this balancing of interests requires careful analysis of the facts of each individual case.

[T]he delicate balancing of the national interest in free and open trade and a State's interest in exercising its taxing powers requires a case-by-case analysis and ... such analysis has left " 'much room for controversy and confusion and little in the way of precise guides to the

States in the exercise of their indispensable power of taxation.' "

*Westinghouse Electric Corp. v. Tully,* —— U.S. ——, ——, 104 S.Ct. 1856, 1865, 80 L.Ed.2d 388 (1984) (quoting *Boston Stock Exchange,* 429 U.S. at 329, 97 S.Ct. at 606, which quotes *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 457, 79 S.Ct. 357, 362, 3 L.Ed.2d 421 (1959)). Thus, every commerce clause challenge turns upon the specific facts presented.

■ We also appreciate the distinction established by the Supreme Court between "protectionist" measures employed by states to favor local businesses and measures employed by states to safeguard the health and safety of their people. While the latter may be upheld if treatment of intrastate and interstate commerce is even-handed and if effects on interstate commerce are only incidental, the former are subject to a "virtually per se rule of invalidity ...." *Philadelphia v. New Jersey,* 437 U.S. 617, 623–24, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978) (invalidating a New Jersey statute prohibiting importation of solid or liquid waste originating outside the state). *See Minnesota v. Clover Leaf Creamery,* 449 U.S. 456, 471–72, 101 S.Ct. 715, 727–28, 66 L.Ed.2d 659 (1981) (upholding Minnesota statute banning retail sale of milk in plastic non-returnable containers); *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.").

"A finding that state legislation constitutes 'economic protectionism' may be made on the basis of either discriminatory purpose or discriminatory effect." *Bac-*

regulate commerce with foreign nations), and the Import-Export Clause, U.S. Const. art. I, § 10, cl. 2 (providing that "[n]o state shall, without the consent of Congress, lay any Impost or Duties on Imports or Exports, except what may

be absolutely necessary for executing its inspection Laws."). We note that this issue was not litigated in the district court, and we do not decide it on this appeal.

*chus Imports v. Dias,* —— U.S. ——, ——, 104 S.Ct. 3049, 3055, 82 L.Ed.2d 200 (1984) (citations omitted). In the instant case, the California beef tax on out-of-state processors has a discriminatory effect; therefore, there is no need for us to address the issue of discriminatory purpose. Because we find discriminatory effect, the California beef tax at issue constitutes economic protectionism. Thus, we apply a very strict level of scrutiny—a "virtually per se rule of invalidity."

## IV. DISCRIMINATORY EFFECT

■ The California beef tax is discriminatory on its face. Out-of-state beef processors are taxed according to the quantity of beef they market in California, while no comparable tax is levied on in-state beef processors. Facial discrimination, however, is not the decisive factor. As the Supreme Court stated in *Maryland v. Louisiana,* 451 U.S. 725, 756, 101 S.Ct. 2114, 2134, 68 L.Ed.2d 576 (1981):

> A state tax must be assessed in light of its actual effect considered in conjunction with other provisions of the State's tax scheme. "In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce."

451 U.S. at 756, 101 S.Ct. at 2134 (quoting *Best & Co. v. Maxwell,* 311 U.S. 454, 455–56, 61 S.Ct. 334, 334–35, 85 L.Ed. 275 (1940)).

Examining the assessment imposed on out-of-state beef processors "in light of its actual effect" and considering it in conjunction with assessments on the in-state beef industry, we conclude that the assessment discriminates against interstate commerce in practical operation because (1) it treats out-of-state taxpayers differently from similarly situated in-state taxpayers, and (2) it gives a direct commercial advantage to local business. Both points are discussed below.

### A. *Unequal Treatment*

*Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 70, 83 S.Ct. 1201, 1204, 10 L.Ed.2d 202 (1963) laid down the rule requiring equal treatment of similarly situated in-state and out-of-state taxpayers. In *Halliburton,* the Supreme Court invalidated a Louisiana use tax that treated similarly situated taxpayers differently. The Court observed that "equal treatment for in-state and out-of-state taxpayers similarly situated" is a condition precedent to validity under the Commerce Clause. *Id.* at 70, 83 S.Ct. at 1204. The appellant in *Halliburton* manufactured special equipment in Oklahoma for use in its Louisiana operations. Because the equipment was manufactured outside Louisiana, the appellant was charged a use tax on the full value of the assembled equipment. A similarly situated business both manufacturing and using the equipment in Louisiana paid tax on the value of the raw materials only. The Louisiana tax placed the out-of-state manufacturer-user on the same footing as an in-state competitor who chose to buy special equipment in Louisiana at retail, but not with an identically situated in-state competitor, who manufactured its own special equipment.

Here, the California beef assessment violates the *Halliburton* rule of equal treatment. Out-of-state beef processors are taxed; their California counterparts are not. The structure of the assessment requires different treatment of identically situated in-state and out-of-state taxpayers.

### B. *Direct Advantage to Local Business*

By taxing out-of-state beef processors and not taxing their in-state competitors, California gives a direct commercial advantage to local business. The Supreme Court has repeatedly held that the Commerce Clause forbids such preferential treatment. In *Bacchus Imports v. Dias,* —— U.S. ——, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) the Supreme Court invalidated Hawaii's excise tax on sales of wholesale liquor that exempted several kinds of locally produced wines and spirits. Hawaii defended the facially discriminatory exemptions by argu-

ing that they were a reasonable means of promoting the consumption of liquors made from indigenous Hawaiian plants. The Supreme Court rejected the state's justification for the discriminatory exemption and held that it is "a cardinal rule" that "[n]o State, consistent with the Commerce Clause, 'may impose a tax which discriminates against interstate commerce ... by providing a direct commercial advantage to local business.'" —— U.S. at ——, 104 S.Ct. at 3054 (quoting *Boston Stock Exchange v. State Tax Commission*, 429 U.S. 318, 329, 97 S.Ct. 599, 607, 50 L.Ed.2d 514 (1977). *See also Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981) (invalidating Louisiana's "first-use" tax on natural gas because, *inter alia*, in-state users were favored by a series of exemptions and credits); *Boston Stock Exchange v. State Tax Commission*, 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977) (invalidating a New York stock transfer tax scheme because it reduced the tax payable by non-residents when the transfer involved an in-state sale, and also set a maximum limit to the tax payable on an in-state, but not on an out-of-state, sale).

Here, as in *Bacchus*, the state argues that the discriminatory assessment is a reasonable means of promoting the consumption of beef. But the means chosen to promote the consumption of beef provide a direct commercial advantage to California beef processors by levying a tax on their out-of-state competitors. The Commerce Clause forbids such preferential treatment.

### C. *Passback Theory*

■ Despite clear differential treatment of interstate and intrastate commerce, the district court concluded that the California tax was non-discriminatory. The district court's holding was based on the testimony of the state's economic expert who expressed the view that the tax on out-of-

state beef processors would not be discriminatory in practical effect because those beef processors would be able to shift the tax burden to out-of-state beef producers. If this assertion is true, identically situated taxpayers, in-state and out-of-state beef producers, would shoulder the burden of the tax, and identically situated in-state and out-of-state processors would be free of it.

The state's argument that the tax imposed on out-of-state beef processors will be "passed back" to out-of-state producers is based on an analysis of present economic conditions in the beef cattle industry. According to Dr. James G. Youde, an expert agricultural economist who testified for the state, the "pass back" takes place because meat processors have an "economic edge" over cattle feeders and ranchers. Dr. Youde ascribes this edge to significant expansion of United States beef cattle supplies over the past twenty years.

The appellant meat associations submitted no evidence to counter the state's economic testimony. Nonetheless, we have concluded that this testimony is not controlling. In *Armco, Inc. v. Hardesty*, —— U.S. ——, —— n. 8, 104 S.Ct. 2620, 2624 n. 8, 81 L.Ed.2d 540 (1984), the Supreme Court held that a state tax could not be upheld on the basis of economic factors that might somehow mitigate its direct burden on interstate commerce.

> Courts are not possessed of instruments of determination so delicate as to enable them to weigh the various factors in a complicated economic setting which, as to the isolated application of the State tax, might mitigate the obvious burden generally created by a direct tax on commerce.

*Freeman v. Hewit*, 329 U.S. 249, 256, 67 S.Ct. 274, 278, 91 L.Ed. 265 (1946) (quoted in *Armco*, —— U.S. at —— n. 8, 104 S.Ct. at 2624 n. 8).[3]

---

**3.** Our conclusion is supported by the Supreme Court's decision in *Bacchus Imports, Ltd.,* —— U.S. ——, 104 S.Ct. 3049, 3054, 82 L.Ed.2d 200 (1984). In *Bacchus Imports,* the state argued that liquor wholesalers lacked standing to attack the constitutionality of a discriminatory tax be-

cause they could shift the burden of the tax to their customers. The Supreme Court found that the cost-shifting theory did not affect the wholesaler's standing—(1) expressing doubt that wholesalers could actually pass on the tax, and

Thus, any existing economic setting in the beef cattle industry, which may theoretically allow out-of-state processors to pass back California's tax to out-of-state beef producers, is legally insufficient to overcome the burden imposed on interstate commerce by California's taxing scheme.

### D. *Compensatory Tax Theory*

■ The state argues that even if we do not accept the passback theory, the assessment on out-of-state beef processors can be justified as a compensatory tax, i.e., one that would complement assessments on in-state beef producers. The Supreme Court has upheld apparently discriminatory tax treatment when the tax on interstate commerce complemented an in-state tax, designed to equalize the in-state and out-of-state tax burden and to make interstate commerce pay a just share of state taxes.

The most common example of such a taxing scheme is an in-state sales tax and compensatory use tax on goods imported from out-of-state. First sanctioned by the Supreme Court in *Henneford v. Silas Mason Co.*, 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937), sales and use tax schemes act to equalize the in-state and out-of-state tax burden. As the Supreme Court reiterated in *Halliburton:*

"Equality is the theme that runs through all the sections of the statute.... No one who uses property in Washington after buying it at retail is to be exempt from a tax upon the privilege of enjoyment except to the extent he has paid a use or sales tax somewhere." The use tax is "upon one activity or incident," and the sales tax is "upon another, but the sum is the same when the reckoning is closed." The burden on the out-of-state acquisition "is balanced by an equal burden where the sale is strictly local."

373 U.S. at 70, 83 S.Ct. at 1204 (quoting *Henneford*, 300 U.S. at 583–84, 57 S.Ct. at 527).

In presenting California's tax on out-of-state beef processors as a compensatory tax, the state relies on *Alaska v. Arctic Maid*, 366 U.S. 199, 81 S.Ct. 929, 6 L.Ed.2d 227 (1961). In *Arctic Maid*, the Supreme Court upheld the validity of an Alaskan tax on freezer ships that froze salmon caught in Alaskan waters for transport to out-of-state canneries. The freezer ship owners argued unsuccessfully that there was no equivalent tax on local freezing operations. In fact, there was a complementary local tax, levied not against businesses who froze fish for the fresh fish market, but against local canners. Although out-of-state freezer ships were being treated differently from local freezers, they were taxed less than local canners, who, although technically engaged in another business, were the freezer ships' closest competitors.

The state contends that *Arctic Maid* allows states to impose compensatory taxes on interstate commerce so long as the effect of the total tax scheme does not impose a greater burden on interstate commerce than on intrastate commerce. *Arctic Maid* is distinguishable from the instant case. A key factor prompting the Supreme Court to uphold the tax in *Arctic Maid* was that while the out-of-state compensatory tax was directed at a business different from the business subject to the in-state tax, the different businesses were direct competitors. The out-of-state business was not placed at a competitive disadvantage, because its closest in-state competitor was also taxed.

In this case, the different businesses being taxed are not competitors. The tax on out-of-state beef processors is not balanced by a tax on their in-state competitors. Thus, unlike the situation in *Arctic Maid*,

---

(2) finding standing even if the burden could be shifted.

Further, we are not aware of any decision in which a discriminatory tax has been upheld on the ground that the payor had the ability to shift the incident of the tax. Such a holding would permit a state to discriminate against any out-of-state seller who was powerful enough to extract favorable concessions from its suppliers. Moreover, the constitutionality of such a scheme could fluctuate as a function of market conditions.

the out-of-state taxpayer here is discriminated against vis-a-vis its local counterpart.

## V. COMPENSATING CALIFORNIA FOR BENEFITS CONFERRED

Our decision today is not intended to infringe on the legitimate power of the states to tax interstate commerce in order to obtain fair compensation for state services. We recognize that states are entitled to make interstate commerce pay its fair share for beneficial state services. "The Commerce Clause balance tips against the tax only when it unfairly burdens commerce by exacting more than a just share from the interstate activity." *Washington Rev. Dept. v. Stevedoring Ass'n.*, 435 U.S. 734, 748, 98 S.Ct. 1388, 1398, 55 L.Ed.2d 682 (1978). As Justice Frankfurter noted, "[t]he simple but controlling question is whether the state has given anything for which it can ask return." *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 444, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940).

We recognize that the California Beef Advisory Council probably confers a benefit on out-of-state beef processors and producers by encouraging the consumption of beef in California and, therefore, that the state may have a legitimate right to be compensated for rendering a beneficial service.[4] We cannot, however, accept California's discriminatory taxing scheme as the means by which such compensation may be realized. There are nondiscriminatory means available. In *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951), the Supreme Court struck down local regulations restricting the importation of milk because the health-oriented purpose could have been achieved by less discriminatory means. The Supreme Court said:

In thus erecting an economic barrier protecting a major local industry against competition from without the State, Madison plainly discriminates against interstate commerce. This it cannot do, even in the exercise of its unquestioned power to protect the health and safety of its people, if reasonable nondiscriminatory alternatives, adequate to conserve legitimate local interests, are available.

340 U.S. at 354, 71 S.Ct. at 298 (footnote omitted).

The state argues that its discriminatory means are justified. The state explains that it is impossible to levy a head fee against an out-of-state cattle producer at the time of an out-of-state sale because it is unknown whether the beef will ever be marketed in California.[5] The beef processors, who actually ship beef into California, are the parties in the production chain with whom California first has sufficient nexus to tax. Likewise, in California, the earliest practical time to assess a fee is at the time of sale or slaughter. Assessing a head fee on live cattle at the time of sale is administratively simpler and, if a fee is assessed every time an animal is sold, the potential for more revenue exists.

Without passing on the validity of any alternate tax scheme, we note that non-discriminatory means of financing the Beef Council appear to be available. For example, California could shift the in-state assessment from cattle producers to beef processors and tax in-state and out-of-state beef processors equally. We recognize that this change would eliminate multiple taxes potentially available on a single animal because a head fee is charged every time a sale occurs. But the assessment could be adjusted to compensate for this loss. In short, it appears that less discriminatory means appear to be available.

---

4. Parties stipulated that approximately 60% of beef consumed in California is produced in other states. After the 1982 amendments, combined Beef Council assessments are expected to total 5.3 million dollars annually of which only 2.1 million dollars, or 40%, will be in the form of mil assessments, the type of assessment levied on out-of-state processors. Therefore, the out-of-state beef industry would have paid substantially less and theoretically benefitted substantially more from the California Beef Council promotions than the in-state beef industry.

5. California would, of course, have no constitutional basis for taxing beef raised and consumed outside of California because the required nexus would be lacking. See footnote 1, *supra*.

## VI. CONCLUSION

In light of recent Supreme Court Commerce Clause precedent, *e.g., Bacchus Imports v. Dias,* —— U.S. ——, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984); *Armco, Inc. v. Hardesty,* —— U.S. ——, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984), the California assessment on imported processed beef cannot stand. Its clearly discriminatory treatment of interstate commerce cannot be excused by evidence of economic factors that might mitigate the direct burden on interstate commerce, nor can the tax be justified when other less discriminatory means exist. The judgment of the district court is REVERSED.