**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ASSOCIATION DES ELEVEURS DE CANARDS ET D'OIES DU QUEBEC, a Canadian nonprofit corporation; HVFG, LLC, a New York limited liability company; HOTS RESTAURANT GROUP. INC., a California corporation,<br>　　　　*Plaintiffs-Appellants*,<br><br>and<br><br>GAUGE OUTFITTERS, INC.,<br>　　　　*Plaintiff*,<br><br>v.<br><br>KAMALA D. HARRIS, Attorney General; EDMUND G. BROWN, in his official capacity as Governor of California; THE STATE OF CALIFORNIA,<br>　　　　*Defendants-Appellees*. | No. 12-56822<br><br>D.C. No.<br>2:12-cv-05735-SVW-RZ<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
May 8, 2013—Pasadena, California

Filed August 30, 2013

Before: Harry Pregerson and Raymond C. Fisher, Circuit
Judges, and Wiley Y. Daniel, Senior District Judge.[*]

Opinion by Judge Pregerson

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's denial of a motion
to preliminarily enjoin the State of California from enforcing
California Health & Safety Code § 25982, which bans the
sale of products that are the result of force feeding birds to
enlarge their livers beyond normal size.

The panel affirmed the district court's denial of Eleventh
Amendment immunity to the Attorney General. The panel
dismissed the State of California and Governor Brown from
the lawsuit because they were immune from suit.

---

[*] The Honorable Wiley Y. Daniel, Senior District Judge for the U.S.
District Court for Colorado, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

The panel held that the only product covered by § 25982 at issue in this appeal was foie gras, a delicacy made from fattened duck liver. The panel held that the district court did not abuse its discretion when it concluded that plaintiffs failed to raise serious questions concerning their Due Process Clause challenge, which alleged that the statute's definition of force feeding was vague and failed to give persons fair notice of what conduct was prohibited. The panel further held that the district court did not abuse its discretion when it concluded that § 25982 did not discriminate against interstate commerce or directly regulate interstate commerce.

## COUNSEL

Michael Tenenbaum (argued), The Tenenbaum Law Firm, Santa Monica, California, for Plaintiffs-Appellants.

Stephanie F. Zook (argued), Deputy Attorney General; Constance L. LeLouis, Supervising Deputy Attorney General; Douglas J. Woods, Senior Assistant Attorney General; Kamala D. Harris, Attorney General of California, Sacramento, California, for Defendants-Appellees.

Melissa Grant, (argued) and Arnab Banerjee, Capstone Law APC, Los Angeles, California; Tiffany Hedgpeth, Jeremy Esterkin, and Bryce Woolley, Bingham McCutchen LLP, Los Angeles, California, for Amici Curiae.

## OPINION

PREGERSON, Circuit Judge:

Plaintiffs produce and sell foie gras, a delicacy made from fattened duck liver. To produce their foie gras, Plaintiffs feed their ducks through a tube inserted directly in the ducks' esophagi. In July 2012, California Health & Safety Code § 25982 came into effect. The statute bans the sale of products that are the result of force feeding birds to enlarge their livers beyond normal size. We are called upon to review the district court's denial of Plaintiffs' motion to preliminarily enjoin the State from enforcing § 25982. We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.

## FACTUAL BACKGROUND

Appellants Association des Éleveurs de Canards et d'Oies due Québec (the "Canadian Farmers") and HVFG LLC ("Hudson Valley") are non-California entities that raise ducks for slaughter and are producers and sellers of foie gras. Appellant Hot's Restaurant Group, Inc. ("Hot's Kitchen") is a restaurant in California that sold foie gras before § 25982 came into effect (collectively, "Plaintiffs").

Hudson Valley and the Canadian Farmers raise Moulard ducks. Moulard ducks are a hybrid of Muscovy male ducks and Pekin female ducks. They are bred for their capacity of ingestion and fat storage in their livers. In addition to foie gras, Hudson Valley and the Canadian Farmers produce and sell breasts, legs, fat, bones, offal, and feathers from their Moulard ducks.

Generally, Moulard ducks are raised for foie gras through the following process. The Canadian Farmers and Hudson Valley take one-day-old ducks from the hatchery to breeding farms. There, the ducks are raised until they are fully grown, a process that generally takes eleven to thirteen weeks. For the first four weeks of their lives, the ducks eat pellets from feeding pans that are available to them twenty-four hours a day. In the next stage, which lasts one to two months, the ducks eat different pellets from feeding pans that are available to them twenty-four hours a day. For the next two weeks, the ducks continue to eat pellets from feeding pans that are available to them at only certain times during the day. In the final stage, called *gavage*, which lasts between ten to thirteen days, the ducks are hand-fed by feeders who use "a tube to deliver the feed to the crop sac at the base of the duck's esophagus."

## STATUTORY BACKGROUND

The statutory provision Plaintiffs seek to enjoin, § 25982, is within the statute entitled "Force Fed Birds." Cal. Health & Safety Code §§ 25980 *et seq.* Section 25982 states: "A product may not be sold in California if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size." *Id.* § 25982. Section 25981 further provides: "A person may not force feed a bird for the purpose of enlarging the bird's liver beyond normal size, or hire another person to do so." *Id.* § 25981.[1]

---

[1] Plaintiffs do not seek to enjoin § 25981. Section 25981 prohibits force feeding birds in California. Because Plaintiffs do not raise their ducks in California, § 25981 does not preclude them from force feeding their ducks.

Sections 25981 and 25982 became operative on July 1, 2012.  The California Legislature delayed the effective date of the statutes from January 1, 2005 to July 1, 2012 "to allow a seven and one-half year period for persons or entities engaged in agricultural practices that include raising and selling force fed birds to modify their business practices." *Id.* § 25984(c).

## PROCEDURAL BACKGROUND

The day after § 25982 came into effect, Plaintiffs filed a lawsuit to enjoin Defendants-Appellees Attorney General Kamala Harris, Governor Edmund Brown, and the State of California (collectively, the "State") from enforcing the statute.  Plaintiffs argue that § 25982 is unconstitutional because it violates the Due Process Clause and the Commerce Clause of the United States Constitution.

Plaintiffs applied *ex parte* for a temporary restraining order and an order to show cause why a preliminary injunction should not issue.  The district court denied the motion.  Plaintiffs then filed a motion for preliminary injunction.  The district court denied the motion, and Plaintiffs timely appealed.

## DISCUSSION

### I.  Eleventh Amendment Immunity

The district court determined that the Attorney General is not entitled to Eleventh Amendment immunity and did not address the State of California's or the Governor's immunity claims.  We must resolve an Eleventh Amendment immunity claim before reaching the merits. *Coal. to Defend Affirmative*

*Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012). We review a denial of immunity *de novo. Id.*

"States are protected by the Eleventh Amendment from suits brought by citizens in federal court." *Douglas v. Cal. Dep't of Youth Auth*., 271 F.3d 812, 817, *amended by*, 271 F.3d 910 (9th Cir. 2001). Plaintiffs are plainly barred by the Eleventh Amendment from suing the State of California in federal court.

An exception under *Ex Parte Young*, 209 U.S. 123 (1908), however, allows citizens to sue state officers in their official capacities "for prospective declaratory or injunctive relief . . . for their alleged violations of federal law." *Coal. to Defend Affirmative Action*, 674 F.3d at 1134. The state official "'must have some connection with the enforcement of the act.'" *Id.* (quoting *Ex parte Young*, 209 U.S. at 157). That connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.* (quoting *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)).

Here, Governor Brown is entitled to Eleventh Amendment immunity because his only connection to § 25982 is his general duty to enforce California law. *See, e.g.*, *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846–47, *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002).

We may affirm the district court's determination that the Attorney General is not entitled to Eleventh Amendment immunity on any sufficient ground. *See Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir. 2002). Section 25983

expressly authorizes enforcement of the statute by district attorneys and city attorneys. Cal. Health & Safety Code § 25983(c) (stating that "[a] person or entity that violates this chapter [Force-Fed Birds] may be prosecuted by the district attorney of the county in which the violation occurred, or by the city attorney of the city in which the violation occurred").

Pursuant to Article V, § 13 of the California Constitution, the Attorney General not only has "direct supervision over every district attorney," but also has the duty "to prosecute any violations of law . . . [and] shall have all the powers of a district attorney," whenever she believes that the law is not being adequately enforced. Cal. Const. art. V, § 13. The combination of § 25983, which gives district attorneys the authority to prosecute violations of § 25982, and the Attorney General's duty to prosecute as a district attorney establishes sufficient enforcement power for *Ex Parte Young*. *See Coal. to Defend Affirmative Action*, 674 F.3d at 1132–35 (affirming the denial of Eleventh Amendment to the President of the University of California because he was "duty-bound" to enforce the challenged statute, which precluded "using race as a criterion in admission decisions"); *Nat'l Audubon Soc'y, Inc*, 307 F.3d at 842, 847 (affirming the denial of Eleventh Amendment immunity to state official with "direct authority over and principal responsibility for enforcing Proposition 4," a law "to protect wildlife and domestic pets").

The Attorney General's argument that she is entitled to Eleventh Amendment immunity because she has not shown she intends to enforce § 25982 is foreclosed by our decision in *National Audubon Society, Inc. v. Davis*. 307 F.3d at 846. There, we held that a plaintiff need not show that a "present threat of enforcement" exists before invoking the *Ex Parte Young* exception. *Id.* Instead, a state official who contends

that he or she will not enforce the law may challenge plaintiff's Article III standing based on "an unripe controversy." *Id.* at 847. The State makes no such challenge.

We affirm the district court's denial of Eleventh Amendment immunity to the Attorney General. We dismiss the State of California and Governor Brown from this lawsuit because they are immune from suit.

## II. Denial of Plaintiffs' Preliminary Injunction

### A. Standard of Review & Legal Standards

A plaintiff seeking a preliminary injunction must establish that: (1) he is "likely to succeed on the merits"; (2) he is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under our "sliding scale" approach to evaluating the first and third *Winter* elements, a preliminary injunction may be granted when there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff," so long as "the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (internal quotation marks and citations omitted).

"We review a district court's grant or denial of a preliminary injunction for abuse of discretion and the underlying legal principles de novo." *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011). We may reverse the district court "only where [the district court] relied on an erroneous legal premise or abused its discretion." *Id.*

Further, when we agree with the district court that a plaintiff has failed to show the likelihood of success on the merits, we "need not consider the remaining three [*Winter* elements]." *Id*. at 776-77.

## B. The Scope of § 25982

We begin our analysis by addressing the parties' dispute over the scope of § 25982. Plaintiffs contend that the district court correctly concluded that § 25982 prohibits the sale of all products from force-fed birds including duck breasts and down jackets. The State argues that § 25982 covers only products that are the result of force feeding a bird to enlarge its liver beyond normal size, i.e., products made from an enlarged duck liver. We agree with the State's interpretation.

The scope of a statute "is a question of law," which we review *de novo*. *In re Lieberman*, 245 F.3d 1090, 1091 (9th Cir. 2001). In interpreting a state statute, we apply the state's rules of statutory construction. *Id.* at 1092. Under California law, a court must "look[] first to the language of the statute and give[] effect to its plain meaning." *Id.* "If the intent of the legislature is not clear from the language of the statute, legislative history may be considered." *Id.*

Section 25982 states, "[a] product may not be sold in California if it is *the result of* force feeding a bird for the purpose of enlarging the bird's liver beyond normal size." Cal. Health & Safety Code § 25982 (emphasis added). "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection . . . ," *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326 (2011) (quoting *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008)); *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305,

1349 (2009) (interpreting phrase "as a result of" in statute "according to its common usage," which means "an element of *causation*"). The plain meaning of § 25982 is that it applies only to a product that is produced by force feeding a bird to enlarge its liver.

Although we need not consider the legislative history, it supports our interpretation. The accompanying Bill Analysis for Senate Bill 1520 which proposed the legislation Force Fed Birds, notes that the purpose of "th[e] bill is intended to prohibit the force feeding of ducks and geese . . . , Force feeding is the common method used to produce foie gras . . . , The Author states that *no other livestock product is produced via force feeding . . .*," Sen. Comm. on Bus. & Professions (Cal. 2004), Analysis of S.B. 1520 as introduced Apr. 26, 2004, at 4 (emphasis added); Sen. Rules Comm. (Cal. 2004), Analysis of S.B. 1520 as amended May 6, 2004, at 5 (same).[2] Further, foie gras is the only product produced via force feeding mentioned in the Bill Analyses. Specifically, the Bill Analyses discuss the background of foie gras; countries that have banned force feeding to produce foie gras; grocers who have refused to purchase foie gras; whether there are alternative methods of producing foie gras; and support for, and against, the foie gras industry.[3]

---

[2] We may take judicial notice of § 25982's legislative history. *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005).

[3] *See* Sen. Comm. on Bus. & Professions (Cal. 2004), Analysis of S.B. 1520 as introduced Apr. 26, 2004, at 5–11; Sen. Rules Comm. (Cal. 2004), Analysis of S.B. 1520 as amended May 6, 2004, at 5–12; Assem. Comm. on Bus. and Professions (Cal. 2004), Analysis of S.B. 1520 as amended May 6, 2004, at 4–11; Sen. Third Reading (Cal. 2004), Analysis of S.B. 1520 as amended June 21, 2004, at 2–5; Sen. Third Reading (Cal. 2004), Analysis of S.B. 1520 as amended Aug. 17, 2004, at 2–5; Sen. Rules

We conclude that § 25982 is limited to products that are produced by force feeding a bird for the purpose of enlarging the bird's liver beyond normal size; it therefore does not prohibit the sale of duck breasts, down jackets, or other non-liver products from force-fed birds.[4]  In the district court, Plaintiffs' evidence showed that foie gras was the only product that was produced by force feeding.[5]  Thus, the only product covered by § 25982 at issue in this appeal is foie gras.

## C.  Plaintiffs' Due Process Clause Challenge

Plaintiffs contend that they raised a serious question that the statute violates their due process rights because: (1) the statute's definition of force feeding is vague; and (2) the statute fails to give persons fair notice of what conduct is prohibited.  We disagree on both points.

"Whether a statute or regulation is unconstitutionally vague is a question of law reviewed de novo." *United States v. Ninety-Five Firearms*, 28 F.3d 940, 941 (9th Cir. 1994).  "It is well established that vagueness challenges to statutes

---

Comm. (Cal. 2004), Analysis of S.B. 1520 as amended Aug. 17, 2004, at 3–4, 6–7.

[4] Plaintiffs argue that § 25982 was intended to ban every duck product, not just foie gras, because the statute does not use the term "foie gras." Section 25982, however, does not prohibit foie gras.  It bans the sale of foie gras produced through force feeding, but would not ban foie gras produced through alternative methods.

[5] During oral argument, Plaintiffs' counsel argued that the industry of down feathers relies on force feeding ducks, but Plaintiffs' declarations contain no evidence to support that argument.

which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975). "To be struck down for vagueness, a statute or regulation must fail 'to give a person of ordinary intelligence fair notice that his contemplated conduct' is forbidden." *Donovan v. Royal Logging Co.*, 645 F.2d 822, 831 (9th Cir. 1981) (quoting *United States v. Dacus*, 634 F.2d 441, 444 (9th Cir. 1980)). "Economic regulation is subject to 'a less strict vagueness test' than criminal laws . . . ," *Great Am. Houseboat Co. v. United States*, 780 F.2d 741, 746 (9th Cir. 1986) (quoting *Vill. of Hoffman Estates v. Flip-Side Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982)).

### 1. The statute's definition for force feeding is not vague.

Section 25980 states, "[f]orce feeding a bird means a process that causes the bird to consume more food than a typical bird of the same species would consume voluntarily. Force feeding methods include, but are not limited to, delivering feed through a tube or other device inserted into the bird's esophagus." Cal. Health & Safety Code § 25980(b). Plaintiffs incorrectly contend that the statute's definition of force feeding is unconstitutionally vague because it lacks an identifiable measurement of exactly how much food a bird can be fed. Plaintiffs' argument ignores key terms that define the process of force feeding. These terms demonstrate that the statute covers Plaintiffs' conduct in this case.

As Plaintiffs' evidence demonstrates, there are four feeding stages of Moulard ducks. In the first three stages, ducks feed themselves from feeding pans that are available

either twenty-four hours a day or certain times during the day. But in the "final stage, known as *gavage*," each duck is "hand-fed [by a feeder] using a tube to deliver the feed to the crop sac at the base of the duck's esophagus." In fact, Merriam Webster defines "gavage" as the "introduction of material into the stomach by a tube." During the gavage stage, the feeders dictate how much food the ducks are fed.

The specific example of force feeding under the statute—feeding a bird using a tube so that the bird will consume more food than it would consume voluntarily—is how Plaintiffs feed their ducks during the gavage stage. Thus, the district court did not abuse its discretion when it held that Plaintiffs failed to raise serious questions that, as applied to Plaintiffs, the definition of force feeding is not vague.

### 2.  The statute gives fair notice of prohibited conduct.

Section 25982 states that "[a] product may not be sold in California if it is the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size." Cal. Healthy & Safety Code § 25982. According to Plaintiffs, the term "purpose" refers to a farmer's subjective intent in feeding his birds, and they are left to guess whether a farmer's state of mind violated the statute. We disagree with Plaintiffs' reading of the statute.

The term "for the purpose of" in the statute modifies the phrase "force feeding a bird." *See Am. Small Bus. League v. U.S. Small Bus. Admin.*, 623 F.3d 1052, 1054 (9th Cir. 2010) ("As a matter of syntax, the latter phrase most naturally modifies only the former phrase."). The natural reading of "force feeding a bird for the purpose of enlarging the bird's

liver beyond normal size" is a description of the objective nature of the force feeding, rather than the subjective motive of the farmer. *See W. Watersheds Project v. Interior Bd. of Land Appeals*, 624 F.3d 983, 987 (9th Cir. 2010) (holding that a statute's phrase "for the purpose of" did not refer to "subjective motives," but rather was an objective description of the conduct covered by the statute). Here, Plaintiffs do not contest that force feeding a bird through a tube inserted into the bird's esophagus is for the purpose of enlarging the duck's liver.

Finally, Plaintiffs' description of § 25982 as invidious because it imposes strict liability is without merit. "[C]ivil penalties may be imposed without *mens rea* requirements because they are indeed civil . . . ," *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1152 (9th Cir. 2009). We therefore conclude that the district court did not abuse its discretion when it concluded that Plaintiffs failed to raise serious questions concerning their Due Process Clause challenge.[6]

## D.  Plaintiffs' Commerce Clause Challenge

Plaintiffs argue that we should find that § 25982 violates the Commerce Clause because the statute:  (1) discriminates against interstate commerce; and (2) directly regulates interstate commerce. The district court held that Plaintiffs failed to raise a serious question on the merits of their claim, and we agree.

---

[6] Plaintiffs also argue that § 25982 will be arbitrarily enforced to preclude only the sale of liver products, but those are the only products covered by the statute.

"Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (quoting *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984)).   This limitation on the states to regulate commerce is "known as the dormant Commerce Clause." *Id.*  The primary purpose of the dormant Commerce Clause is to prohibit "statutes that discriminate against interstate commerce" by providing benefits to "in-state economic interests" while "burdening out-of-state competitors." *Id.* at 1148 (quoting *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 87 (1987), and *Dep't of Revenue v. Davis*, 553 U.S. 328, 337 (2008)).

The Supreme Court has adopted a "two-tiered approach to analyzing state economic regulation under the Commerce Clause." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578–79 (1986).

> [1]  When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [the Court has] generally struck down the statute without further inquiry.  [2] When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, [the Court has] examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

*Id.* at 579 (citations omitted).[7]    The district court did not abuse its discretion when it concluded that § 25982 falls into the second tier because the statute does not discriminate against interstate commerce or directly regulate interstate commerce.

### 1.   Section 25982 is not discriminatory.

The Supreme Court has "interpreted the Commerce Clause to invalidate local laws that impose commercial barriers or discriminate against an article of commerce by reason of its origin or destination out of State." *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994); *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148 (explaining that discriminatory statutes seek economic protectionism and are "'designed to benefit in-state economic interests by burdening out-of-state competitors'" (quoting *Dep't of Revenue*, 553 U.S. at 337)).   Conversely, a statute that "treat[s] all private companies exactly the same" does not discriminate against interstate commerce. *United Haulers Ass'n, Inc.*, 550 U.S. at 342.   This is so even when only out-of-state businesses are burdened because there are no comparable in-state businesses. *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 119-20, 125 (1978).

Under § 25982, no entity can sell a product that "is the result of force feeding a bird" regardless of the product's source or origin. Cal. Health & Safety Code § 25982.   As the

---

[7] With respect to the first tier of the inquiry, more recent cases have applied strict scrutiny to discriminatory laws. *See, e.g.*, *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 343 (2007); *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 995 (9th Cir. 2002).

district court correctly found, "[s]ection 25982's economic impact does not depend on *where* the items were produced, but rather *how* they were produced." Because § 25982 bans the sale of both intrastate and interstate products that are the result of force feeding a bird, it is not discriminatory. *See Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1012 (9th Cir. 1994) (holding that "[a]n import ban that simply effectuates a complete ban on commerce in certain items is not discriminatory, as long as the ban on commerce does not make distinctions based on the origin of the items"); *Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326, 335 (5th Cir. 2007) (holding that a statute that "treats both intrastate and interstate trade of horsemeat equally by way of a blanket prohibition" cannot be "considered economic protectionism").

### 2. Section 25982 does not directly regulate interstate commerce.

A statute is not "'invalid merely because it affects in some way the flow of commerce between the States.'" *Nat'l Ass'n of Optometrists*, 682 F.3d at 1148 (quoting *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976)). Instead, a statute violates the dormant Commerce Clause per se when it "*directly* regulates interstate commerce." *NCAA v. Miller*, 10 F.3d 633, 638 (9th Cir. 1993) (emphasis added).

Plaintiffs argue that the district court should have found that § 25982 directly regulates extra-territorial conduct because the statute: (a) targets out-of-state entities; (b) bans foie gras unless all farmers comply with California's standards; (c) controls commerce outside of California; and (d) will result in conflicting legislation. We disagree.

a.  Section 25982 is not aimed at out-of-state producers.

Plaintiffs contend that § 25982 targets wholly extraterritorial activity because it is "aimed in only one direction: at out-of-state producers." Plaintiffs reason that § 25982 is "apparently directed at farmers who feed their ducks and geese outside [California]," because § 25981 already prohibits businesses in California from force feeding birds.

Plaintiffs misinterpret the interplay between the statutory provisions. Plaintiffs assume that § 25981 and § 25982 are functionally equivalent, with § 25981 targeting California entities and § 25982 targeting out-of-state entities. In truth, § 25981 serves an entirely different purpose than § 25982. Section 25981 prohibits entities from force feeding birds in California. But for § 25981, a California producer could force feed ducks in California, and then sell foie gras outside of California. Section 25981, however, does not prohibit *the sale* of products produced by force feeding birds. That is where § 25982 comes in. Section 25982 applies to both California entities and out-of-state entities and precludes sales within California of products produced by force feeding birds regardless of where the force feeding occurred. Otherwise, California entities could obtain foie gras produced out-of-state and sell it in California. Thus, Plaintiffs' assertion that § 25982 is directed solely at out-of-state producers is incorrect.

      b.   Plaintiffs have not shown that § 25982 constitutes a total ban on foie gras or that a nationally uniform production method is required for foie gras.

Plaintiffs rely on *Schollenberger v. Pennsylvania*, 171 U.S. 1 (1898), to argue that § 25982 has directly regulated interstate commerce because it has stopped the free flow of foie gras between states. In *Schollenberger*, the Supreme Court invalided an import and sale ban on oleomargarine (margarine) that carried criminal penalties. *Id.* at 8. It held that the "absolute prohibition of an unadulterated, healthy, and pure article" violated the Commerce Clause. *Id.* at 13.

Plaintiffs would have us assume, without evidentiary support, that § 25982 amounts to a flat ban on foie gras. Plaintiffs' declarations do not demonstrate that foie gras may be produced only by force feeding. The district court found that "the evidence may [ultimately] show that Section 25982 only precludes a more profitable method of operation—force feeding birds for the purpose of enlarging its liver—rather than affecting the interstate flow of goods." It may be that Plaintiffs are precluded from using force feeding to produce foie gras, but "the dormant Commerce Clause does not . . . guarantee Plaintiffs their preferred method of operation." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1151. At this stage in the proceedings, Plaintiffs have not shown that the effect of § 25982 is a complete import and sales ban on foie gras.

Moreover, in *Schollenberger* the Supreme Court emphasized that Congress actively regulated the industry of oleomargine. 171 U.S. at 8. Congress had "given a definition of the meaning of oleomargarine, and ha[d]

imposed a special tax on the manufacturers of the article, on wholesale dealers and upon retail dealers." *Id.* at 8. *See also Cloverleaf Butter Co. v. Patterson*, 62 S. Ct. 491, 502 (1942) (stating that "[t]he manufacture and distribution . . . of process and renovated butter is a substantial industry which, because of its multi-state activity, cannot be effectively regulated by isolated competing states").

In a different context, we have recognized that a state's regulation of a nationally uniform business can have extraterritorial effects. In *NCAA v. Miller*, we considered the constitutionality of a Nevada statute that imposed standards for how the NCAA, an interstate organization, could run its enforcement proceedings. 10 F.3d at 638–39. "[F]or the NCAA to accomplish its goals, [its] enforcement procedures must be applied even-handedly and uniformly on a national basis." *Id.* at 638 (internal quotation marks and citation omitted). The national uniformity required by the NCAA meant that the NCAA could not adopt Nevada's procedures for Nevada, and alternative procedures for its business in other states. *Id.* at 639. As a result, to avoid liability under Nevada's statute, the NCAA "would have to apply Nevada's procedures to enforcement proceedings throughout the country." *Id.* We concluded that Nevada's statute directly regulated interstate commerce. *Id.*

Plaintiffs argue that the need for national uniformity for the foie gras market is evidenced by the federal Poultry Products Inspection Act's ("PPIA") requirement that ducks undergo several stages of federal inspection.[8]  The PPIA

---

[8] Plaintiffs did not raise preemption as a basis for the preliminary injunction in the district court. Thus, the issue of preemption is not before us.

ensures that "poultry products distributed to [the public] are wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 451. Plaintiffs contend that the PPIA provides a comprehensive set of detailed regulations that includes standards indicating that "ducks will be hand-fed to create foie gras." The standards to which Plaintiffs refer, however, merely state that "Goose liver and duck liver foie gras (fat liver) are obtained exclusively from specially fed and fattened geese and ducks." It says nothing about the force feeding of geese and ducks.

At this stage in the proceedings, Plaintiffs have not demonstrated that a nationally uniform foie gras production method is required to produce foie gras. If no uniform production method is required, Plaintiffs may force feed birds to produce foie gras for non-California markets. California's standards are therefore not imposed as the sole production method Plaintiffs must follow. We therefore hold that the district court correctly concluded that Plaintiffs have not raised serious questions that § 25982 "require[s] an individual or business to choose between force feeding a bird in another state and complying with California law."

c.    Section 25982 is not a price fixing statute.

Plaintiffs rely heavily on *Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989), and *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935), to assert that § 25982's practical effect is to control conduct outside the boundaries of California. In *Healy*, the Supreme Court struck down Connecticut's statute that "require[d] out-of-state shippers of beer to affirm that their posted prices for products sold to Connecticut wholesalers are, as of the moment of posting, no higher than the prices at which those products are sold in . . . bordering

States." 491 U.S. at 326. The Supreme Court concluded that the statute "controll[ed] commercial activity occurring wholly outside the boundary of the State" because it "preclude[d] the alteration of out-of-state prices after the moment of affirmation." *Id.* at 337–38. Similarly, in *Baldwin*, the Supreme Court struck down a New York statute that prohibited the sale of milk within New York if the milk was acquired from Vermont farmers at a lower price than New York farmers would have been paid for the milk. *Baldwin*, 294 U.S. at 521.

The Supreme Court has explained that *Healy* and *Baldwin* involved "price control or price affirmation statutes." *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669 (2003). Accordingly, the Court has held that *Healy* and *Baldwin* are not applicable to a statute that does not dictate the price of a product and does not "t[ie] the price of its in-state products to out-of-state prices." *Id*. Here, § 25982 does not impose any prices for duck liver products and does not tie prices for California liver products to out-of-state prices. *Healy* and *Baldwin* are thus inapplicable in this case.

> d.  Plaintiffs have not shown that § 25982 will have the practical effect of conflicting legislation.

Plaintiffs warn that if § 25982 is found to be constitutional it will result in "[b]alkanization in the market for duck products." Plaintiffs, however, cite to proposed legislation, not enacted legislation. The only other domestic statute on foie gras mentioned by the parties and amicus curiae is Chicago's former ordinance prohibiting foie gras. Although the Chicago ordinance was upheld by an Illinois district court, when the appeal was pending in the Seventh Circuit, the city repealed the ordinance and the

decision was vacated.  *See Ill. Rest. Ass'n v. City of Chicago*, 492 F. Supp. 2d 891 (N.D. Ill. 2007), *vacated as moot*, 06 C 7014, 2008 WL 8915042 (N.D. Ill. Aug. 7, 2008).  On this record, Plaintiffs' fear of balkanization is based on speculation.  "[T]he [Supreme] Court has never invalidated a state or local law under the dormant Commerce Clause based upon mere speculation about the possibility of conflicting legislation." *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 470 (9th Cir. 2001).

For these reasons we conclude that the district court did not abuse its discretion when it concluded that Plaintiffs failed to raise serious questions concerning their Commerce Clause challenge.

### 3. Section 25982 does not substantially burden interstate commerce.

The district court correctly determined that Plaintiffs failed to raise serious questions that § 25982 discriminates or directly regulates interstate commerce.  Consequently, the district court properly analyzed, under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), whether "the burden [the statute] imposes on interstate commerce is 'clearly excessive in relation to the putative local benefits.'" *S.D. Myers, Inc.*, 253 F.3d at 471 (quoting *Pike*, 397 U.S. at 142).

We have explained that under *Pike*, a plaintiff must first show that the statute imposes a substantial burden before the court will "determine whether the benefits of the challenged laws are illusory." *Nat'l Ass'n of Optometrists*, 682 F.3d at 1155.  We conclude that the district court correctly held that Plaintiffs did not raise a serious question that § 25982 will substantially burden interstate commerce.

First, as the district court recognized, most statutes that impose a substantial burden on interstate commerce do so because they are discriminatory. *See id.* at 1148 (noting that "[m]ost regulations that run afoul of the dormant Commerce Clause do so because of discrimination"). As discussed above, § 25982 is not discriminatory.

Second, less typically, statutes impose significant burdens on interstate commerce as a consequence of "inconsistent regulation of activities that are inherently national or require a uniform system of regulation." *Id.* But here, Plaintiffs have failed to show that the foie gras market is inherently national or that it requires a uniform system of regulation. *See Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1192 (9th Cir. 1990) (noting that examples of "courts finding uniformity necessary" fall into the categories of "transportation" or "professional sports league[s]").

Third, the district court found that although Plaintiffs alleged that § 25982 would "result in the loss of over $5 million in interstate and foreign sales of wholesale foie gras and moulard duck products, this figure overestimates Section 25982's impact."[9] Plaintiffs' alleged loss includes duck products, such as duck breasts, that are not produced by force feeding birds and are not covered by § 25982. Additionally, as the district court emphasized, § 25982 may only preclude Plaintiffs' "more profitable" method of producing foie gras, rather than Plaintiffs' foie gras production. Thus, Plaintiffs failed to raise serious questions that § 25982 imposes a substantial burden on interstate activity.

---

[9] As they did in the district court, Plaintiffs make no more than a passing reference to § 25982's alleged burden on foreign commerce.

We likewise affirm the district court's holding that Plaintiffs failed to raise a serious question that § 25982's burden clearly exceeds its local benefits. The parties agree that the State has an interest in preventing animal cruelty in California. *See United States v. Stevens*, 130 S. Ct. 1577, 1585 (2010) ("[T]he prohibition of animal cruelty itself has a long history in American law, starting with the early settlement of the Colonies."). The district court found that the State has pursued its interest in preventing animal cruelty "both by outlawing the actual practice of force-feeding birds for the purpose of enlarging their livers (Section 25981) and the sale of such products (Section 25982)."

Plaintiffs argue on appeal that precluding sales of products produced by force feeding birds "does nothing" to prevent animal cruelty in California. But in the district court, "Plaintiffs . . . presented no evidence that Section 25982 is an ineffective means of advancing that goal." Plaintiffs give us no reason to doubt that the State believed that the sales ban in California may discourage the consumption of products produced by force feeding birds and prevent complicity in a practice that it deemed cruel to animals. *Cf. Empacadora de Carnes de Fresnillo, S.A. de C.V.*, 476 F.3d at 336 (concluding that a state ban on slaughtering and selling horsemeat for human consumption may preserve horses and prevent human consumption of horsemeat because it "remov[es] the significant monetary incentives" in the horsemeat market). "[T]he Supreme Court has frequently admonished that courts should not 'second-guess the empirical judgments of lawmakers concerning the utility of legislation.'" *Pac. Nw. Venison Producers,* 20 F.3d at 1017 (quoting *CTS Corp.*, 481 U.S. at 92).

Plaintiffs argue that less burdensome alternatives to § 25982 exist. Plaintiffs urge us to rewrite § 25982 by restricting the statute to "sales of products from ducks that have been *force fed in California*." We will not do so. "[F]or us to invalidate a statute based on the availability of less burdensome alternatives, the statute would have to impose a significant burden on interstate commerce," which is not the case here. *Nat'l Ass'n of Optometrists*, 682 F.3d at 1157.

Because we affirm the district court's holding that Plaintiffs failed to raise a serious question that they are likely to succeed on the merits, we need not consider the remaining *Winter* elements of whether Plaintiffs will suffer irreparable harm; whether the balance of equities tip in Plaintiffs' favor; or whether an injunction is in the public interest. *Winter*, 555 U.S. at 20; *DISH Network Corp.*, 653 F.3d at 776-77.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of Plaintiffs' motion for a preliminary injunction. We **REMAND** for further proceedings consistent with this opinion.