

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   19-10222 |
| Plaintiff-Appellee, | D.C. No. 2:15-cr-00198-GMN-NJK-1 |
| v. | |
| EDWIN YOSHIHIRO FUJINAGA, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   21-10155 |
| Plaintiff-Appellee, | D.C. Nos. 2:15-cr-00198-GMN-NJK-1 2:15-cr-00198-GMN-NJK |
| v. | |
| EDWIN YOSHIHIRO FUJINAGA, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted February 16, 2022
San Francisco, California

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Before: SILER,[**] S.R. THOMAS, and CALLAHAN, Circuit Judges.

Edwin Fujinaga appeals his conviction and sentence for mail fraud pursuant to 18 U.S.C. § 1341, wire fraud pursuant to 18 U.S.C. § 1343, and money laundering pursuant to 18 U.S.C. § 1957. He also appeals the denial of his motion seeking injunctive relief to prevent the destruction of evidence under Fed. R. App. P. 8(a)(1)(C). We have jurisdiction under 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the factual and procedural history of this case, we do not recount it here.

1. Injunction request. We have jurisdiction to consider Fujinaga's appeal of the district court's denial of his post-trial request for an injunction to preserve evidence pending appeal. *See Natural Res. Def. Council Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). The district court did not abuse its discretion in denying Fujinaga's motion. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (describing standard).

In deciding whether to grant an injunction or stay pending appeal, we must consider whether: "(1) he is 'likely to succeed on the merits'; (2) he is 'likely to

_____

[**] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

2

suffer irreparable harm in the absence of preliminary relief'; (3) 'the balance of equities tips in his favor'; and (4) 'an injunction is in the public interest.'" *Id.* (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Fujinaga argues that an injunction pending appeal is required because the Receiver appointed by the United States Securities and Exchange Commission had provided notice that it intended to destroy documents in its possession. Fujinaga claims that such destruction would be in violation of the government's ongoing obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). However, Fujinaga failed to argue the elements necessary to obtain a preliminary injunction, either before the district court or on appeal, and therefore fails to meet his burden of persuasion. *See Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

Even if he had, the record supports the conclusion that Fujinaga has not made a strong showing that he is likely to succeed on the merits. The government points out that it has no authority over the Receiver. More importantly, as the district court explained, the Receiver had provided an inventory of the material to Fujinaga and had granted Fujinaga access to it. There is no violation of *Brady* if the defendant "has enough information to be able to ascertain the supposed *Brady* material on his own." *Milke v. Ryan*, 711 F.3d 998, 1017 (9th Cir. 2013) (quoting *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991)). And, as the district

3

court also noted, Fujinaga has made no showing of materiality. In short, Fujinaga has not made a strong showing—or indeed any showing at all—of a likelihood of succeeding on the merits. The district court properly denied the injunction request.

2. *Brady* claims. The government did not commit a *Brady* violation. "To establish a *Brady* violation, the evidence must be (1) favorable to the accused because it is either exculpatory or impeachment material; (2) suppressed by the government, either willfully or inadvertently; and (3) material or prejudicial." *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) (quoting *Benn v. Lambert*, 283 F.3d 1040, 1052–53 (9th Cir. 2002)). *Brady* applies to evidence in the government's possession—either actual or constructive, *United States v. Cano*, 934 F.3d 1002, 1022–23 (9th Cir. 2019) (quoting *Browning v. Baker*, 875 F.3d 444, 460 (9th Cir. 2017)), of which the government has knowledge—either actual, *see United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995), or implied, *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). There is no duty to discover evidence held by a state or federal agency that is not involved in the investigation or prosecution of the defendant. *Aichele*, 941 F.2d at 764; *Cano*, 934 F.3d at 1026.

The material that Fujinaga claims the government suppressed in violation of *Brady* was all in the physical possession of other entities not connected to the criminal prosecution, namely, the government of Japan and the SEC Receiver.

Fujinaga's speculation that exculpatory evidence was obtained by the SEC fails because the SEC is not an executive branch agency and the Argon database was, at one point, in the possession of Fujinaga's company and his civil attorneys. Moreover, the government did not have the requisite access and control of the challenged evidence to impute possession to it. *See Santiago*, 46 F.3d at 893–94. Thus, the government did not have a *Brady* duty to disclose the evidence Fujinaga contends it withheld. In addition, the record indicates that Fujinaga had the same opportunity to discover the information held by the Receiver as did the government. *Milke*, 711 F.3d at 1017. Finally, Fujinaga's speculation that some of this evidence may have been favorable to him fails to establish its materiality. *See Runningeagle v. Ryan*, 686 F.3d 758, 767 (9th Cir. 2012). In sum, the government did not violate *Brady*.

3.     *Napue* claim. The government did not tender perjured testimony in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). "A claim under *Napue* will succeed when (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." *Henry v. Ryan*, 720 F.3d 1073, 1084 (9th Cir. 2013) (quotations omitted). "Mistaken, inaccurate or rebuttable" testimony does not give rise to a *Napue* claim. *Id.*

Here, a witness testified on cross examination that the government had shown him bank statements indicating that Fujinaga's company had misspent $76.9 million of investors' money, when it was undisputed that this bank statement did not exist. On redirect, the government questioned the witness, who ultimately conceded that he did not recall every document the government had shown him. The witness agreed that he could not recall specifically seeing a bank statement that supported the $76.9 million figure. On re-cross examination, the witness changed his story and was positive he had seen a bank statement with that figure. *Id.* He insisted the government had shown him such a bank statement in court.

There is no *Napue* violation here because this testimony falls into the category of "mistaken, inaccurate or rebuttable" testimony. *Id.* Further, Fujinaga failed to establish that the error was material, namely that there was a "reasonable likelihood" that the testimony affected the jury's judgment when the jury knew no $76.9 million bank statement was presented in court. *See United States v. Renzi*, 769 F.3d 731, 752 (9th Cir. 2014).

4.     Sequestration claim. The district court did not abuse its discretion by allowing the government's summary witness to observe trial after finding the witness essential to the prosecution's case. *See United States v. Seschillie*, 310 F.3d 1208, 1213 (9th Cir. 2002) (describing standard). Rule 615 does not apply to

"a person whose presence a party shows to be essential to presenting the party's claim or defense." Fed. R. Evid. 615(c). Here, the district court found the witness essential to helping the prosecutor understand the significance of new testimony and explain it to the jury. Given the complexity of the fraud scheme, and the fact that the witness had spent 1,800 hours familiarizing himself with hundreds of pages of bank records and accounting spreadsheets, the district court did not abuse its discretion in allowing him to remain in the courtroom.

5.      Evidentiary error claim, tax fraud evidence. The district court did not plainly err in admitting evidence of tax fraud. The testimony that Fujinaga's company never made money was relevant to understanding that Fujinaga knew his promises to investors were false. Rule 404(b) was not implicated because the testimony was inextricably intertwined with the crimes charged and "part of the transaction that serves as the basis for the criminal charge" because it was undertaken to conceal his fraud from the IRS to prolong the scheme. *United States v. Loftis*, 843 F.3d 1173, 1177–78 (9th Cir. 2016).

6.      Evidentiary error claim, loss amount. The district court did not err in allowing the government to introduce evidence of a $1.5 billion loss at trial. Fujinaga asserts the evidence was prejudicial because it was unprovable. However, the district court correctly determined that the loss figure was documented in a

spreadsheet created by a witness who relied on that information in the course of her job. The evidence was therefore probative and not substantially outweighed by any of the dangers outlined in Federal Rule of Evidence 403. The district court did not err in admitting it.

7. Evidentiary error claim, admission of material in violation of *Brady*. The district court did not abuse its discretion in admitting evidence derived from Fujinaga's bookkeeper's records. Because Fujinaga cannot establish a *Brady* violation, no secondary evidence sanction is appropriate.

8. Evidentiary error claim, pyramid king image. The district court did not abuse its discretion in allowing the government to use a demonstrative exhibit depicting a pyramid scheme in closing argument. The district court found that the image was illustrative of a ponzi scheme and did not implicate any other negative connotations. The district court did not abuse its discretion in determining that the exhibit was not "unduly prejudicial" under Federal Rule of Evidence 403.

9. Jury instruction challenge, no adverse inference instruction. The district court did not abuse its discretion in declining to give an adverse inference instruction. *See United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013) (stating standard). Fujinaga asserts that the government had allowed certain evidence to be destroyed. But the district court reasonably found that: (1) the

8

government never possessed the evidence, so it had no duty to preserve it; (2) the office where this evidence existed was vandalized before the Receiver took possession; (3) there were no facts to indicate the government "fail[ed] to adhere to some standardized reasonable care procedure;" and (4) the government lacked reason to believe the records it possessed were not accurate and therefore needed to be compared to the missing evidence. *See id.* There was no clear error in the district court's factual findings, and no abuse of discretion in applying those facts to the law.

10. Jury instruction challenge, witness immunity. The district court did not abuse its discretion in formulating an immunity instruction that informed the jury that it was allowed to view the testimony of a certain witness with greater caution than other witnesses. Fujinaga claims that the instruction provided an impermissible inference that only this witness's testimony on cross examination should be viewed with "greater caution," but the instruction did not contain this limitation. It was not defective, nor was it misleading or confusing, so there was no abuse of discretion here. *See United States v. Warren*, 25 F.3d 890, 898 (9th Cir. 1994).

11. Jury instruction challenge, vicarious liability. The district court did not abuse its discretion in giving a vicarious liability instruction. The instruction

9

was in accord with the Ninth Circuit Pattern Instructions. Fujinaga's argument that the instruction is flawed by the omission of the word "knowingly," is precluded by *United States v. Stapleton*, 293 F.3d 1111, 1115–18 (9th Cir. 2002).

12. Jury instruction challenge, mail and wire fraud. The district court did not commit plain error in formulating its mail and wire fraud instructions. The instructions did not amount to a constructive amendment of the indictment because the instructions used language that was narrower than the language of the indictment. *See United States v. Kalu*, 791 F.3d 1194, 1206 (10th Cir. 2015).

In addition, Fujinaga correctly points out that the instruction's definition of "intent to defraud" as the "intent to deceive *or* cheat" has subsequently been held invalid in *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020) (holding that "intent to defraud" requires the government to prove intent to "deceive *and* cheat"). Fujinaga did not object at trial and thus, the question is whether the "error (1) is plain, (2) affects substantial rights, and (3) seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Tirouda*, 394 F.3d 683, 688 (9th Cir. 2005).

Here, the error does not meet the second or third prongs of the plain error test because the evidence presented at trial indicated that Fujinaga deceived investors by promising them their investments were safe and cheated investors out

of their money by using investment funds for his personal gain and to pay back other investors. Accordingly, there is no reasonable probability that the jury convicted Fujinaga of only deception or cheating, and so the error did not alter the outcome.

13. Jury instruction challenge, money laundering. The district court did not plainly err in formulating its money laundering instruction. Fujinaga claims that the instruction omitted an essential element of the crime under *United States v. Stein*, 37 F.3d 1407 (9th Cir. 1994). Under *Stein*, a district court errs when it gives a general knowledge instruction alongside a money laundering instruction without, in some way, clarifying for the jury that it must still find the defendant had specific knowledge that the funds at issue in the money laundering counts involved criminally derived property. *See United States v. Knapp*, 120 F.3d 928, 932 (9th Cir. 1997). However, in this case, the money laundering instruction itself further defined "criminally derived property" as "property constituting, or derived from, the proceeds of a criminal offense" and clarified that, with regard to this element, "the government must prove that the defendant knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense." Thus, the instruction satisfied the specific

11

knowledge requirement. *See id.* There was no error that affected Fujinaga's substantial rights.

In addition, the district court did not err in failing to instruct the jury on the pre-2009 definition of "proceeds" in its money laundering instruction. The indictment charged Fujinaga with three counts of money laundering each taking place in 2010. Thus, no pre-2009 instruction was required. Although the jury heard evidence that the ponzi scheme dated back to 2000, the timing question relates to when the charged monetary transactions occurred, *see United States v. Grasso*, 724 F.3d 1077, 1083, 1090 (9th Cir. 2013) (looking to pre-2009 definition when money laundering transactions occurred in 2002), not when the criminal enterprise initially obtained the proceeds. Fujinaga cites no law to the contrary. There was no plain error in not giving the pre-2009 instruction.

14. Cumulative error claim. Given that the only error did not rise to the level of plain error, and that the district court did not commit any reversible errors, Fujinaga is not entitled to reversal under the cumulative error doctrine. *Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007).

15. Insufficiency of the evidence claim. There was sufficient evidence to support the jury's verdict on all counts. In assessing the sufficiency of the evidence, we "determine whether 'after viewing the evidence in the light most

12

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Fujinaga contends that the evidence does not establish the specific intent to defraud as required to sustain convictions for mail and wire fraud. The evidence showed that the company never made money. Yet, Fujinaga's marketing materials portrayed the company's investment product as highly lucrative and secure—neither of which was true. Moreover, even as the company was collapsing, Fujinaga fabricated a story about a state audit to keep investors investing in it. There was adequate evidence of intent to sustain the verdicts on mail and wire fraud.

To the extent that Fujinaga relies on his challenge to his mail and wire fraud convictions to challenge his money laundering conviction, it fails. To the extent he relies on his assertion that the district court should have used a pre-2009 definition of "proceeds," it fails for the reasons previously discussed. Fujinaga finally claims the government failed to trace the funds involved in the money laundering scheme. However, the government is entitled to prove money laundering by establishing that the defendant's entire business operation was fraudulent, *United States v.*

13

*Hanley*, 190 F.3d 1017, 1025 (9th Cir. 1999)*, superseded on other grounds*, which was the avenue taken here.  In sum, there was sufficient evidence to uphold the money laundering conviction.

16.    Sentencing challenge, loss amount.  The district court did not clearly err in calculating the loss amount for purposes of sentencing.  *See United States v. Torlai*, 728 F.3d 932, 937 (9th Cir. 2013) (stating standard).  The government proposed a loss figure based on information contained in a company database and MRI's bookkeeper's  testimony that, since the inception of the company, Fujinaga misappropriated $813 million of investors' money by transferring those funds into the general corporate account.  Fujinaga contends that the bookkeeper's testimony was not reliable or accurate.  However, the bookkeeper's accounting records were corroborated by the government's summary witness who reconciled the books with the company's  bank statements, and the fact that the loss figure was contested does not make the district court's conclusion clearly erroneous.

Fujinaga also argues that the loss calculation did not contain an offset for money returned to investors.  However, this contention is belied by testimony that general fund money was not used to repay investors.  Thus, the district court's calculation was not clearly erroneous and was "a reasonable estimate of the loss

14

based on available information." *United States v. Zolp*, 479 F.3d 715, 719 (9th Cir. 2007).

17. Sentencing challenge, vulnerable victim enhancement. The district court did not err in imposing a vulnerable victim enhancement. Fujinaga contends that there was no proof that he specifically targeted elderly investors. However, for the enhancement to apply, the defendant need not specifically target a certain group so long as the defendant knows or should have known of the victims' unusual vulnerability. U.S.S.G. § 3A1.1. Here, the district court applied the two-level enhancement after finding that: (1) Fujinaga marketed the investment product as a low risk investment appropriate for retirement savings; (2) he specifically rejected a suggestion to exclude investors over the age of 80 and included a clause that made the investment certificates easily transferrable in an inheritance; and (3) many investors were of advanced age. Given these facts, the district court did not err in applying the enhancement.

18. Sentencing challenge, substantively unreasonable sentence. The district court did not abuse its discretion in imposing the sentence. It appropriately considered Fujinaga's arguments and applied the factors contained in 18 U.S.C. § 3353(a).

15

19.     Forfeiture challenge.  The district court did not err in imposing the forfeiture order.  There was no plain error with regard to the district court's failure to comply with the requirements of Rule 32.2(b) by not holding a preliminary hearing.  Fujinaga consented to a consolidated forfeiture and restitution hearing, he briefed the issue, and the district court afforded Fujinaga the opportunity to be heard.  In the context of the complete record, he was not deprived of his substantive rights, and no plain error occurred.

Fujinaga also contends that the district court's forfeiture order imposed joint and several liability in violation of *Honeycutt  v. United States*, 137 S. Ct. 1626 (2017).  However, *Honeycutt* only applies to property the "defendant himself did not [personally] acquire." *Id.* at 1630.  Here, the district court found that Fujinaga had full and exclusive authority over the accounts. *United States v. Thompson*, 990 F.3d 680, 689 (9th Cir. 2021) is not to the contrary. *Thompson*, like *Honeycutt*, did not involve a situation in which the defendant had exclusive control of the property.

20.     Restitution challenge.  The district court did not commit reversible error in imposing the  restitution order. *See United States v. Gagarin*, 950 F.3d 596, 607 (9th Cir. 2020) (stating standard).  The record reflects that restitution was only ordered for the counts for which Fujinaga was convicted.  The district court

ordered restitution for those investors who had outstanding certificates as of April 2013, excluding investors whose principal had been repaid. The investors with outstanding certificates were harmed "in the course of the scheme." 18 U.S.C. § 3663A(a)(2). The precise amount was calculated by adding the amount in the corporate general account, which testimony indicated consisted of investor funds, plus amounts paid to old investors through new investor money, which would not have been taken into consideration in the corporate general account. The district court properly declined at sentencing to offset the restitution amount by the sums recovered by the Receiver, because there was no evidence as to what sums, if any, the Receiver had distributed to victims, leaving for later determination the amount of any offset. Fujinaga argues that the amount of discount urged by the government was arbitrary. However, the district court explained that the discount was to ensure that the total amount of restitution recovered did not exceed the total amount of loss. There was no reversible error in the district court's approach to determining restitution.

**AFFIRMED.**